1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

9

| | |
|---|---|
| 10 SAMMY YOUNG WEAKLEY, | Case No. EDCV 15-2544-VAP (KK) |
| 11          Petitioner, | |
| 12     v. | FINAL REPORT AND |
| 13 RONALD RACKLEY, Warden, | RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| 14          Respondent. | |
| 15 | |

16

17    This Final Report and Recommendation is submitted to the Honorable

18 Virginia A. Phillips, United States District Judge, pursuant to Title 28 of the

19 United States Code, section 636 and General Order 194 of the United States

20 District Court for the Central District of California.

21

22                                   **I.**

23                    **SUMMARY OF RECOMMENDATION**

24    Petitioner Sammy Young Weakley ("Petitioner"), a California state prisoner

25 proceeding pro se, has filed a Petition for Writ of Habeas Corpus ("Petition")

26 pursuant to Title 28 of the United States Code, section 2254(d), challenging his

27 2012 convictions for robbery, assault with a caustic substance, use of tear gas,

28 purchase, possession or use of tear gas by a felon, and assault in Riverside County

Superior Court.  Petitioner sets forth claims of juror misconduct and erroneous admission of evidence.  Because Petitioner's claims fail on their merits, the Court recommends the Petition be denied.

## II.

## CLAIMS FOR RELIEF

Petitioner's claims, as presented in his Petition, are as follows:

(1) Claim One: The trial court erred in failing to excuse Juror No. 2 in violation of Petitioner's Sixth and Fourteenth Amendment rights;

(2) Claim Two: The trial court erred in admitting evidence of Petitioner's prior bad acts.

Pet. at 5.[1]

## III.

## PROCEDURAL HISTORY

On June 14, 2012, following a jury trial in California Superior Court for the County of Riverside, Petitioner was convicted of two counts of robbery in violation of California Penal Code section 211; two counts of assault in violation of California Penal Code section 245; one count of assault with a caustic chemical in violation of California Penal Code section 244; unlawful use of tear gas in violation of California Penal Code section 22610(b); and possession of tear gas by a felon in violation of California Penal Code section 22810(g).  Lodgment No. ("lodg.") 1, Vol. 2 at 474-77; Lodg. 3, Vol. 1 at 175-77, 195-201.[2]  Petitioner also admitted he

---

[1] The Court refers to the pages of the Petition as if they were consecutively paginated.

[2] The Court's citations to Lodgments refer to the documents lodged by Respondent in support of the Answer.  ECF Docket No. ("dkt.") 8, 11.  Lodgment No. 1 is a copy of the Reporter's Transcript ("RT") of Petitioner's trial court proceedings.  Lodgment No. 2 is the Augmented Reporter's Transcript ("ART") of Petitioner's trial court proceedings.  Lodgment No. 3 is a copy of the Clerk's Transcript ("CT") from Petitioner's trial court proceedings.

had served seven prior prison terms.  2 RT 481-88; 1 CT 175-77.  On October 4, 2012, Petitioner was sentenced to nine years in state prison.  2 RT 630; 1 CT 267-68; 2 CT 308-09.

On October 31, 2012, Petitioner filed a Notice of Appeal.  2 CT 315.  On May 28, 2013, Petitioner filed an Opening Brief in support of the direct appeal.  Lodg. 4.  On July 17, 2014, the California Court of Appeal affirmed Petitioner's conviction on direct appeal in a reasoned decision.  Suppl. Lodg. 2.

On August 15, 2014, Petitioner filed a Petition for Review to the California Supreme Court.  Lodg. 8.  On October 1, 2014, the California Supreme Court summarily denied review of the appeal.  Lodg. 9.

On November 20, 2015, Petitioner constructively filed the instant Petition.[3]  Dkt. 1 at 8.  On January 28, 2016, Respondent filed an Answer, contending Petitioner's claims are meritless.  Dkts. 6, 7.  Petitioner has not timely filed a Traverse.[4]  The matter thus stands submitted and ready for decision.

## IV.

## RELEVANT FACTS

For a summary of the facts, this Court relies on the California Court of Appeal's reasoned decision on Petitioner's direct appeal:[5]

---

[3] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted).

[4] On March 23, 2016, the Court issued its original Report and Recommendation.  Dkt. 12.  On April 11, 2016, Petitioner filed a "Traverse."  Dkt. 15.  The Court hereby construes Petitioner's "Traverse" as Objections to the original Report and Recommendation.

[5] Because this factual summary is drawn from the California Court of Appeal's opinion, "it is afforded a presumption of correctness that may be rebutted only by clear and convincing evidence."  Moses v. Payne, 555 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted).  To the extent Petitioner challenges the accuracy of this summary, the Court has independently reviewed the trial record and finds the summary accurate.  The court of appeal refers to Petitioner as "defendant."

1    **1.    Current Crime**

2    On January 19, 2012, Ronald Romanowski was working at the

3    Walmart store in San Jacinto.  He was a loss prevention officer and

4    was in plain clothes.  At around 9:00 a.m., he observed defendant and

5    two women, one of whom was defendant's pregnant girlfriend, Chante

6    Park, and their friend, Tonya Volk, enter the store.  Romanowski

7    followed them around the store.

8    Park had a shopping cart in which she had an open pink and

9    white tote bag.  Romanowski observed all three of them place several

10   items next to the bag in the shopping cart.  Defendant was observed

11   putting a pack of toilet paper in the cart.  Thereafter, the two women

12   went to the infant department in the store and defendant went in

13   another direction.  Romanowski followed Park and Volk.

14   While Volk and Park were in the infant department, Park

15   transferred items from her shopping cart into the open pink and white

16   bag.  Volk looked around while Park placed the items in the bag.  The

17   two women walked to the cash register where they met with

18   defendant.  Volk paid for some food items she had in a cart she was

19   pushing.  She used food stamps to pay for the items.  Defendant paid

20   for two items he had in his hand.  Park put the pink and white bag over

21   her shoulder.  No one paid for the items that had been placed in the

22   pink and white bag.

23   Romanowski called his supervisor, Judy Randolph.  Randolph

24   immediately went outside to the parking lot to position herself to help

25   Romanowski.  Randolph was wearing a security uniform.

26   Defendant, Park and Volk all exited the store together.  Once

27   they were in the parking lot, Romanowski and Randolph approached

28   them and identified themselves as Walmart security officers.  They

asked them to return the items in the pink and white bag and were asked to return to the store.

Suddenly, defendant sprayed a substance in Romanowski's face. He also tried to spray the substance in Randolph's face but she was able to crouch down and was only sprayed on her shoulders and back. Romanowski felt a burning sensation in his eyes and face, which lasted several hours. He had trouble breathing and had to kneel down.

Park and Volk fled the area. Before they left, the security coordinator for Walmart, Mary Silvas, who was also in the parking lot, observed Park hand the bag to defendant. Defendant ran and threw the bag under a car. Silvas recovered the bag. The items in the bag included baby outfits, bandages, baby wipes, dog collar or leash, and toilet paper. They had not been paid for by any of the three persons.

Defendant was found hiding in a nearby store. Romanowski identified defendant at a field showup. A canister of a substance called "Back Off," which was commonly used as dog repellant, was found in the parking lot. Defendant admitted the can of Back Off belonged to him. He claimed he used it to control his pit bulls. According to the label on the Back Off spray, it warned that it could irritate the skin, eyes, and nose. It was considered a "tear gas" or pepper spray.

**2.   Prior Offense**

On June 4, 2010, defendant and Park had entered the same Walmart store in San Jacinto. Nicholas Adams, who was the loss prevention officer on duty that day, observed them with a shopping cart in the pharmacy department. Park and defendant put several items in the cart from various departments in the store. They went to the sporting goods department and put all of the items in Park's purse. They left the store without paying for the items.

1          Adams apprehended defendant and Park in the parking lot and

2    escorted them back into the store.  They willingly returned to the

3    store.  Adams recovered the merchandise, which included makeup and

4    a knife, from Park's purse.  Adams contacted the sheriff's department,

5    but after one hour, no one had responded.  Adams let defendant and

6    Park leave the store.  Adams made them sign an agreement that they

7    would not enter the Walmart store again, and if they did, they would

8    be arrested for trespassing.  Further, Adams warned that if they were

9    caught shoplifting again, the police would be called and Walmart

10    would press charges.

11  Suppl. Lodg. 2 at 3-6 (footnote omitted).

## V.

## STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless the adjudication:

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

    "'[C]learly established Federal law' for purposes of § 2254(d)(1) includes only 'the holdings, as opposed to the dicta, of th[e] [U.S. Supreme] Court's decisions'" in existence at the time of the state court adjudication.  White v. Woodall, ____ U.S. ____, 134 S. Ct. 1697, 1702, 1706, 188 L. Ed. 2d 698 (2014).

1    However, "circuit court precedent may be 'persuasive' in demonstrating what law

2    is 'clearly established' and whether a state court applied that law unreasonably."

3    <u>Maxwell v. Roe</u>, 628 F.3d 486, 494 (9th Cir. 2010).

4        Overall, AEDPA presents "a formidable barrier to federal habeas relief for

5    prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, ___

6    U.S. ___, 134 S. Ct. 10, 16, 187 L. Ed. 2d 348 (2013).  The federal statute presents

7    "a difficult to meet . . . and highly deferential standard for evaluating state-court

8    rulings, which demands that state-court decisions be given the benefit of the

9    doubt." <u>Cullen v. Pinholster</u>, 563 U.S. 170, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557

10   (2011) (internal citation and quotation marks omitted).  On habeas review, AEDPA

11   places the burden on petitioners to show the state court's decision "was so lacking

12   in justification that there was an error well understood and comprehended in

13   existing law beyond any possibility for fairminded disagreement." <u>Harrington v.</u>

14   <u>Richter</u>, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).  Put another

15   way, a state court determination that a claim lacks merit "precludes federal habeas

16   relief so long as fairminded jurists could disagree" on the correctness of that ruling.

17   <u>Id.</u> at 101.  Federal habeas corpus review therefore serves as "a guard against

18   extreme malfunctions in the state criminal justice systems, not a substitute for

19   ordinary error correction through appeal." <u>Id.</u> at 102-03 (internal citation and

20   quotation marks omitted).

21       Where the last state court disposition of a claim is a summary denial, this

22   Court must review the last *reasoned* state court decision addressing the merits of

23   the claim under AEDPA's deferential standard of review.  <u>Maxwell</u>, 628 F.3d at

24   495.  <u>See also</u> <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 380, 130 S. Ct. 2250, 176 L.

25   Ed. 2d 1098 (2010) (when a state supreme court denies discretionary review of a

26   decision on direct appeal, the appellate court's decision is the relevant state-court

27   decision for purposes of AEDPA's standard of review); <u>Ylst v. Nunnemaker</u>, 501

28   U.S. 797, 803-04, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

Here, the California Court of Appeal's July 17, 2014 decision on Petitioner's direct appeal (see Suppl. Lodg. 2) stands as the last reasoned decision with respect to Petitioner's claims and will be reviewed under AEDPA's deferential standard of review for claims "adjudicated on the merits."  28 U.S.C. § 2254(d); Richter, 562 U.S. at 99.

## VI.

## DISCUSSION

### A.   CLAIM ONE – JUROR MISCONDUCT

Petitioner claims the trial court violated his Sixth and Fourteenth Amendment rights to an impartial jury by refusing to excuse Juror No. 2 after learning that Juror Nos. 2 and 7 had been speaking about the case during a break in the proceedings.  Pet. at 5.

#### 1.   Additional Factual Background

For a summary of additional relevant facts regarding Petitioner's claim of juror misconduct, this Court relies on the California Court of Appeal's reasoned decision on Petitioner's direct appeal.[6]

Defense counsel advised the trial court that Park had overheard Jurors 2 and 7 conversing about the case in the hallway during a break. Park was questioned by the trial court.  Park claimed she was sitting in the hallway during the break the prior afternoon and overheard Jurors 2 and 7 talking.  She heard Juror 7 say to Juror 2 "'Why did he bring it to trial?'"  Juror 2 laughed and said, "'I don't know.'"  Park claimed she thought they then discussed opening statements.  Juror 7 said something like, "We [sic] obviously knew what we [sic] were doing." Juror 2 responded, "Well, is that a violent charge though?"  Juror 7

---

[6] To the extent Petitioner challenges the accuracy of this summary, the Court has independently reviewed the trial record and finds the summary accurate.

8

1  responded, "'I'm not quite sure, but they knew what they were

2  doing.'"

3       Park felt that Juror 7 was the more "aggressive" person in the

4  conversation.  Park stated, "He was the one that initiated the

5  conversation.  And the black guy [Juror 2], he just ... the Caucasian

6  guy [Juror 7] was talking and the African American guy was just kind

7  of shaking his head more or less.  When he did respond, it was in such

8  a light whisper I could barely hear what he was saying."  Jurors 2 and 7

9  did not express an opinion as to whether defendant was guilty.

10      The trial court first spoke with Juror 2, who he described as the

11 "least culpable."  The trial court noted that Juror 2 was a correction

12 officer.  The trial court advised Juror 2 that his conversation with

13 Juror 7 was overheard by a person.  Juror 2 did not recall saying

14 anything about it being a violent charge.  He recalled Juror 7 in passing

15 asking him why they brought the case to trial, and Juror 2 only

16 responded, "Well, we'll find out."  Juror 2 knew he was not supposed

17 to talk about the case.

18      Juror 7 was then examined and admitted that he asked Juror 2

19 why the case was being brought to trial and wondered why they did

20 not just plead to the charges.  Juror 7 claimed that Juror 2 responded

21 to him and felt the same way.  Juror 7 also stated that Juror 2 told him

22 that this was a waste of time.  Juror 7 insisted that he could still be

23 impartial and fair in the case.  He claimed he had not formed an

24 opinion in the case.  He admitted that the proceedings were "very

25 boring yesterday" and he had trouble paying attention.

26      Defense counsel felt that Juror 2 was trying to minimize his

27 involvement however it was not clear based on what Park had testified

28 to that Juror 7 could form the impression that Juror 2 agreed with him.

Defense counsel asked that both Jurors 2 and 7 be removed.  Defense counsel had been on the fence about removing Juror 2, but after Juror 7's testimony, he felt that it was better to err on the side of caution and remove Juror 2.

The prosecutor responded that Juror 2 expressed no opinion of defendant's guilt.  It appeared he just wanted to end the conversation.  Juror 2 was an innocent party in the conversation.  Juror 7 was completely honest about what he said to Juror 2 but he did not seem to be completely forthcoming in his expression that he could be fair and impartial.  It seemed as though he did not want to continue on the jury.  The prosecutor was on the fence about Juror 7.  It did not appear that Juror 7 was biased but was bored by the process.

The trial court ruled that it "hated" to do it but it had to release Juror 7.  The trial court agreed with the prosecutor that Juror 2 got in the middle of a bad situation when he was approached by Juror 7.  Park witnessed the event and observed that Juror 2 appeared to want to just get out of the situation.  It was the trial court's observation that Juror 2 had not made up his mind as to defendant's guilt and could be fair and impartial.

The trial court had concerns about Juror 7 because he was discussing that defendant should have taken a plea and asked why they (who Park believed was her and defendant) insisted on a trial.  Further, Juror 7 had mentioned that the trial was boring and a waste of time.  The trial court did not believe Juror 7 could be fair and impartial.

Juror 7 was removed and replaced with an alternate.  The trial court admonished the jurors not to discuss the case until they were in deliberations.

1    The trial court later clarified its ruling.  It stated that Juror 7

2    committed misconduct and had been released for cause.  It appeared

3    to the trial court that Juror 7 had already formed an opinion that

4    defendant was guilty.  The trial court noted, "We've discussed this

5    situation with the other witness, and as far as I can tell, there's nothing

6    else involved."

7    Prior to sentencing, defense counsel stated that he wanted to

8    preserve the juror misconduct issue for appeal and wanted to make a

9    motion for new trial.  The trial court advised defense counsel that the

10   motion would have to be in writing.  However, the trial court noted

11   that it felt comfortable with its decision to excuse only one juror

12   because each presented very different situations.  The trial court

13   noted, "We had a very loud, outspoken, narcissistic, self-centered

14   juror who was talking.  And the other individual did the best he could

15   to get away from it as soon as he could."

16   Defendant filed his own written motion for new trial.  The trial

17   court noted that it had not considered the motion because defendant

18   was represented by counsel.  Defendant agreed to keep his attorney

19   and the motion was not heard.

20   Suppl. Lodg. 2 at 6-8.

21   **2.    State Court Opinion**

22   The California Court of Appeal found the trial court properly determined

23   Juror No. 2 should remain on the jury.  Suppl. Lodg. 2 at 11.  The court found that

24   even if the trial court believed Park's version of the conversation and there was a

25   "technical" violation of California Penal Code section 1122[7] and court instructions,

26   _____

27   [7] California Penal Code section 1122 requires the jury be instructed "[t]hat the
     juror shall not converse among themselves, or with anyone else, conduct research,

28   or disseminate information on any subject connected with the trial."  Cal. Penal
     Code § 1122(a)(1).

there was "no substantial likelihood that the discussions influenced the vote of Juror 2." Id.  The court reasoned as follows:

> It is clear that Juror 2 did not initiate the conversation with Juror 7.  Park described Juror 2 as appearing to want to disengage from the conversation.  Juror 2 did not deny the conversation but emphasized he knew they were not to talk about the case and immediately terminated the discussion.  No further inappropriate discussions were reported.  This brief conversation did not raise a reasonable probability of prejudice.
>
> Further, this was a single incident and involved brief statements by Juror 7 that he wondered why the case had been brought to trial.  "Transitory comments of wonderment and curiosity, although misconduct, are normally innocuous, particularly when a comment stands alone without any further discussion." (*People v. Hord* (1993) 15 Cal.App.4th 711, 727–728.)  Neither party expressed that he had made a determination about defendant's guilt.  Moreover, the misconduct in the instant case was certainly less serious than when a juror talks to a nonparty or witness.  (See *People v. Wilson, supra,* 44 Cal.4th at p. 840.)

Id. at 11-12 (footnote omitted).

The court ultimately found Petitioner was not prejudiced by "the trivial violation," because "[t]here was no demonstrated bias shown against [Petitioner] by Juror 2 based on the brief discussion between Jurors 2 and 7."  Id. at 12.

### 3.    Applicable Law

The Supreme Court has held that "the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors."  See Irvin v. Dowd, 366 U.S. 717, 722, 81 S. Ct. 1639, 6 L. Ed. 2d 751 (1961); see also Turner v. Murray, 476 U.S. 28, 53 n.9, 106 S. Ct. 1683, 90 L. Ed. 2d 27 (1986)

1   ("The right to an impartial jury is guaranteed by both the Sixth Amendment, made

2   applicable to the States through the Fourteenth Amendment, and by principles of

3   due process." (citation omitted)).  However, as the Supreme Court explained in

4   Smith v. Phillips, 455 U.S. 209, 217, 102 S. Ct. 940, 71 L. Ed. 2d 78 (1982):

5       [D]ue process does not require a new trial every time a juror has been

6       placed in a potentially compromising situation.  Were that the rule,

7       few trials would be constitutionally acceptable.  The safeguards of

8       juror impartiality, such as voir dire and protective instructions from

9       the trial judge, are not infallible; it is virtually impossible to shield

10      jurors from every contact or influence that might theoretically affect

11      their vote.  Due process means a jury capable and willing to decide the

12      case solely on the evidence before it, and a trial judge ever watchful to

13      prevent prejudicial occurrences and to determine the effect of such

14      occurrences when they happen.

15  Id.

16      Discussion among jurors about the subject matter of a case before formal

17  deliberations commence may constitute juror misconduct.  See Anderson v.

18  Calderon, 232 F.3d 1053, 1098 (9th Cir. 2000) (citations omitted), abrogated in

19  part on other grounds, Osband v. Woodford, 290 F.3d 1036, 1043 (9th Cir. 2002).

20  However, while premature deliberations are improper, it is most important that

21  jurors keep open minds about a case until deliberations officially begin.  See United

22  States v. Klee, 494 F.2d 394, 396 (9th Cir. 1974) ("The important thing is not that

23  jurors keep silent with each other about the case but that each juror keep an open

24  mind until the case has been submitted to the jury."), cert. denied, 419 U.S. 835, 95

25  S. Ct. 62, 42 L. Ed. 2d 61 (1974).  Thus, discussion among jurors is not considered

26  to be as serious as when external forces influence a jury (e.g., "private

27  communication, contact, or tampering" by third parties).  Davis v. Woodford, 384

28

1   F.3d 628, 653 (9th Cir. 2004) (citation and quotation marks omitted), <u>cert.</u>

2   <u>dismissed</u>, 545 U.S. 1165, 126 S. Ct. 410, 162 L. Ed. 2d 933 (2005).

3        In addition, trial courts have broad discretion in assessing juror impartiality.

4   <u>See</u> <u>Irvin</u>, 366 U.S. at 723–25 (citations omitted); <u>Tinsley v. Borg</u>, 895 F.2d 520,

5   525 (9th Cir. 1990) (citations omitted), <u>cert. denied</u>, 498 U.S. 1091, 111 S. Ct. 974,

6   112 L. Ed. 2d 1059 (1991).  A state court's finding that a juror is impartial is entitled

7   to significant deference.  <u>Patton v. Yount</u>, 467 U.S. 1025, 1037 n.12, 104 S. Ct.

8   2885, 81 L. Ed. 2d 847 (1984) (habeas courts owe special deference to state court's

9   determination that juror is impartial) (citations omitted); <u>see also</u> <u>Tinsley</u>, 895 F.2d

10  at 525 ("The findings of state trial and appellate courts on juror impartiality

11  entitled to 'high measure of deference.'" (quoting <u>Rushen v. Spain</u>, 464 U.S. 114,

12  120, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983)).  Moreover, even in cases where juror

13  misconduct has occurred, this Court cannot grant habeas relief unless Petitioner

14  suffered prejudice under <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 637, 113 S. Ct. 1710,

15  123 L. Ed. 2d 353 (1993).  <u>See</u> <u>Jeffries v. Blodgett</u>, 5 F.3d 1180, 1190 (9th Cir. 1993),

16  <u>cert denied</u>, 510 U.S. 1191, 114 S. Ct. 1294, 127 L. Ed. 2d 647 (1994).

17       **4.    Analysis**

18       First, to the extent Petitioner claims premature jury deliberations violated

19  his Sixth Amendment rights, his claim is not cognizable.  Petitioner has not

20  identified any clearly established Supreme Court precedent that addresses the

21  extent to which premature deliberations (as opposed external influences on a jury,

22  or evidence of actual juror bias) may violate a defendant's Sixth Amendment right

23  to an impartial jury.  Where the Supreme Court has not "squarely established" a

24  legal rule that governs a particular claim, it cannot be said that a state court's

25  decision unreasonably applied federal law when it adjudicated that claim.  <u>See</u>

26  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251

27  (2009); <u>Brewer v. Hall</u>, 378 F.3d 952, 955 (9th Cir. 2004), <u>cert. denied</u>, 543 U.S.

28  1047 (2004); <u>see also</u> <u>Gutierrez v. Biter</u>, No. CV 13-3743 ODW (JC), 2015 WL

3866221, at *14 (C.D. Cal. June 18, 2015) (denying habeas relief where no clearly established Supreme Court precedent addresses the extent to which premature deliberations violate a defendant's Sixth Amendment right to an impartial jury).

Second, even assuming Petitioner's claim is cognizable on federal habeas review, it fails because the state court reasonably found there was no actual bias. After holding a hearing and questioning Park, Juror No. 2, and Juror No. 7, the court concluded Juror No. 2 understood his obligations as a juror to maintain an open mind, had not in fact made up his mind as to defendant's guilt, and could be fair and impartial.  2 RT 245-260; see Klee, 494 F.2d at 396 (affirming trial court's finding there was no prejudice where eleven out of fourteen juror's discussed the case during recesses prior to deliberations, because trial court reasonably determined jurors maintained an open mind regarding defendant's guilt).  The state court's determination of juror impartiality is entitled to "special deference." Yount, 467 U.S. at 1038; Tinsley, 895 F.2d 520, 526 (9th Cir. 1990) (finding petitioner failed to satisfy his burden to show by convincing evidence the California courts' factual determination that the juror had no actual bias was erroneous). Moreover, there is no evidence Juror No. 2 relied upon any evidence outside of the record in reaching a verdict, nor does it appear he decided upon Petitioner's guilt before the case was submitted to the jury.  See e.g., Klee, 494 F.2d at 396.

Lastly, even assuming juror misconduct, Petitioner fails to establish prejudice.  While Petitioner alleges premature deliberations occurred, he fails to present any facts demonstrating a resulting substantial and injurious effect on the verdict.  See Jeffries, 5 F.3d at 1190 (citations omitted); see also Belmontes v. Brown, 414 F.3d 1094, 1124–25 (9th Cir. 2005) (federal habeas petitioner failed to show prejudice flowing from alleged juror misconduct because he did not allege facts "other than that premature deliberations took place"), rev'd on other grounds, Ayers v. Belmontes, 549 U.S. 7, 127 S. Ct. 469, 166 L. Ed. 2d 334 (2006).

1    Hence, the California Court of Appeal's decision was not "contrary to" or

2  an "unreasonable application" of "clearly established federal law."  28 U.S.C. §

3  2254(d).  Accordingly, Petitioner is not entitled to habeas relief on Claim One.

**B.    CLAIM TWO – ERRONEOUS ADMISSION OF EVIDENCE**

5    Petitioner claims the trial court erred by admitting evidence of Petitioner

6  having previously stolen items from the same Walmart store by hiding them in

7  Park's purse and leaving the store without paying.  Pet. at 5.

**1.    Additional Factual Background**

9    For a summary of additional relevant facts regarding Petitioner's claim of

10  erroneous admission of evidence, this Court relies on the California Court of

11  Appeal's reasoned decision on Petitioner's direct appeal.[8]

12        Prior to trial, the People filed a motion to admit a prior bad act

13        committed by defendant pursuant to Evidence Code section 1101,

14        subdivision (b).[9]  The People made an offer of proof that on June 4,

15        2010, defendant and Park entered the same Walmart store in San

16        Jacinto.  They secreted items in Park's purse and left the store without

17        paying for them.  They were stopped by two security officers and

18        escorted back into the store.  The stolen items were recovered from

19        Park's purse.  They were released but both Park and defendant signed

20        an agreement not to enter the Walmart store again or be subject to a

21        charge of trespass.  The People sought admission of the prior offense

22        in order to show defendant's intent, assuming defendant claimed he

23  _____

24  [8] To the extent Petitioner challenges the accuracy of this summary, the Court has independently reviewed the trial record and finds the summary accurate.

25  [9] California Evidence Code section 1101, subdivision (b) provides that
   notwithstanding subdivision (a)'s prohibition of character evidence, "evidence that
26  a person committed a crime, civil wrong, or other act" is admissible "when
   relevant to prove some fact (such as motive, opportunity, intent, preparation, plan,
27  knowledge, identify, absence of mistake or accident, or whether a defendant in a
   prosecution for an unlawful sexual act or attempted unlawful sexual act did not
28  reasonably and in good faith believe that the victim consented) other than his or her
   disposition to commit such act."  Cal. Evid. Code § 1101(b).

1    did not aid and abet Park in the instant robbery from the store.  The

2    People also contended it was not unduly prejudicial under Evidence

3    Code section 352.[10]

4        A hearing was conducted.  Defense counsel sought to

5    distinguish the two events by arguing that defendant was not present

6    when Park secreted the items in her bag during the instant case.

7    Further, defendant argued the prior offense was more prejudicial than

8    probative.  The prosecutor responded that defendant had put items in

9    Park's cart and was with her at the register when she did not pay for

10   those items.

11       The trial court found the prior offense admissible.  Defendant

12   immediately sprayed the two Walmart security officers when

13   confronted.  Further, there were items that defendant gave to Park

14   that were secreted in the bag but not paid for at the cash register.  The

15   trial court ruled, "So there's a good chance and inference that

16   [defendant] knew that he was not paying for all of the items that had

17   been removed and were being taken out of the store.  [¶] I do believe

18   that this would be a—there is enough similarity to allow the June 4th,

19   2010, event to come in pursuant to 1101(b)."  It rejected that the prior

20   offense was more prejudicial than probative.

21       During discussion of the instructions, defense counsel argued

22   the prior offense only went to show intent.  The prosecutor disagreed.

23   The trial court agreed it had admitted the evidence to show intent and

24   lack of mistake and knowledge.  It would instruct the jury as to those

25

26   _____

27   [10] California Evidence Code section 352 provides: "The court in its discretion may
     exclude evidence if its probative value is substantially outweighed by the probability
     that its admission will (a) necessitate undue consumption of time or (b) create
28   substantial danger of undue prejudice, of confusing the issues, or of misleading the
     jury."  Cal. Evid. Code § 352.

theories.  The prosecutor further argued that it was relevant to show common plan and scheme.  Defense counsel argued that the greatest degree of similarity was required in order to show common design or plan.  The trial court found the evidence was appropriate to consider for intent and common plan and scheme.

Suppl. Lodg. 2 at 13-14 (footnote omitted).

The trial court instructed the jury as follows:

The People presented evidence of other behavior by the defendant that was not charged in this case and that was that the defendant committed theft of Walmart on June 4th, 2010.  You may consider this evidence only if the People have proved by a preponderance of the evidence that the defendant, in fact, committed the uncharged offense.

Proof by preponderance of the evidence is a different burden of proof than proof beyond a reasonable doubt.  A fact is proved by a preponderance of the evidence if you conclude that it is more likely than not that the fact is true.  If the People have not met this burden, you must disregard this evidence entirely.

If you decide that the defendant committed the uncharged offense, you may, but are not required to, consider that evidence for the limited purpose of deciding whether the defendant was the person who committed the offenses alleged in this case:

1. The defendant acted with the intent to permanently deprive Walmart of the personal property in this case;

2. The defendant had a plan or scheme to commit the offenses alleged in this case.

In evaluating this evidence, consider the similarity or lack of similarity between the uncharged offenses and the charged offenses.

1       Do not consider this evidence for any other purpose except for the

2       limited purpose of intent and common plan or scheme.

3            If you conclude that the defendant committed the uncharged

4       offense, that conclusion is only one factor to consider along with all

5       the other evidence.  It is not sufficient, by itself, to prove that the

6       defendant is guilty of Counts 1 and 2.  The People must still prove

7       each charge beyond a reasonable doubt.

8 2 RT 373-74.

9       **2.**     **State Court Opinion**

10       The state court found "the trial court admitted the evidence of the prior

11 crime to show both intent and common plan and scheme."  Suppl. Lodg. 2 at 16.

12 The court found "the similarity between the two crimes is undeniable."  Id. at 17.

13 The court reasoned as follows:

14            Both crimes were committed while defendant was with Park and

15       in the same Walmart store.  Each time defendant and Park took items

16       from the shelves.  The items were placed in Park's bag.  Defendant

17       clearly was aware that Park had put the items in the pink and white bag

18       in the current instance as he never questioned that she did not pay for

19       the items he put in her cart at the cash register.  Further, he

20       immediately pepper sprayed the officers when they confronted Park

21       outside the store.  Finally, he hid the bag under a van for Park and

22       inside the bag were items he had placed in Park's shopping cart.  The

23       evidence of the prior offense showed a common plan and scheme to

24       take items from Walmart.

25 Id.  The court found the "prior offense was admissible to show defendant

26 possessed the intent to steal the items and aided and abetted Park in stealing the

27 items," because "both events were similar; they both involved the same parties

28 and same modus operandi."  Id.

The court further found "even if the trial court erred by admitting the evidence, . . . the error [was] harmless." Id.  The court found the "evidence as a whole in the current case overwhelmingly supported defendant's guilt." Id. at 18. The court noted the following evidence: "Defendant entered the store with Park and Volk and immediately placed items in Park's shopping cart.  Although he was not present when Park concealed the items in her bag, he reconvened with her and Volk at the cash register.  He never questioned that Park did not pay for the items he had placed in her cart.  Further, he helped secret the bag under the car for Park and tried to ensure their escape by spraying tear gas in the faces of Randolph and Romanowski." Id.  The court also reasoned the jury did not find Petitioner guilty solely on the basis of the prior offense because the jury was instructed that even if they found the prior offense occurred, "that conclusion is only one factor to consider along with all the other evidence.  It is not sufficient, by itself, to prove that the defendant is guilty of Counts 1 and 2.  The People must still prove each charge beyond a reasonable doubt." Id.

### 3.  Applicable Law

State court evidentiary rulings cannot serve as a basis for habeas relief unless the asserted error rises to the level of a federal constitutional violation.  See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).  "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal quotation marks and citation omitted).  "Only when evidence is so extremely unfair that its admission violates fundamental conceptions of justice" has the Supreme Court "imposed a constraint tied to the Due Process Clause." Perry v. New Hampshire, ___ U.S. ___, 132 S. Ct. 716, 723, 181 L. Ed. 2d 694 (2012) (internal quotation marks and citation omitted).

"The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process" and "has not yet made a clear ruling that

admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Id.  Specifically, the Supreme Court has never found that the introduction of propensity evidence offends the Due Process Clause and has expressly declined to address that question. Estelle, 502 U.S. at 75 n.5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime").  Hence, the Ninth Circuit has held a state court's decision to admit propensity evidence cannot violate clearly established federal law for purposes of Section 2254(d)(1). See Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008); Larson v. Palmateer, 515 F.3d 1057, 1066 (9th Cir. 2008); Alberni v. McDaniel, 458 F.3d 860, 863–66 (9th Cir. 2006).

A habeas petitioner "bears a heavy burden in showing a due process violation based on an evidentiary decision." Boyde v. Brown, 404 F.3d 1159, 1172 (9th Cir. 2005).  "Only if there are *no* permissible inferences the jury may draw from the evidence can its admission violate due process.  Even then, the evidence must be of such quality as necessarily prevents a fair trial." Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th Cir. 1991) (internal quotation marks and citation omitted) (emphasis in original).

Moreover, even assuming habeas relief is available for evidentiary error, a petitioner must demonstrate prejudice; that is, that the error had "'a substantial and injurious effect' on the verdict." Dillard v. Roe, 244 F.3d 758, 767 n.7 (9th Cir. 2001 (quoting Brecht, 507 U.S. at 637).

### 4.    Analysis

First, to the extent Petitioner contends admission of the impermissible propensity evidence violated due process, his claim fails.  AEDPA bars relief because there is no clearly established Supreme Court precedent holding that the admission of propensity evidence violates due process. See Estelle, 502 U.S. at 75 n.5; Mejia, 534 F.3d at 1046.

1    Second, Petitioner's claim fails under general due process principles.  A

2    reasonable jurist could find the evidence of Petitioner and Park stealing

3    merchandise from the same Walmart by placing items in Park's purse on June 4,

4    2010, created the permissible inference that Petitioner intended to commit the

5    current offense on January 19, 2012 by the common plan of placing items in Park's

6    purse to steal from Walmart.  Jammal, 926 F.2d at 920.  In fact, while discussing

7    jury instructions with the court, defense counsel even admitted the evidence was

8    permissible to prove intent.  2 RT 327.  Thus, the admission of the prior offense did

9    not violate Petitioner's federal due process rights.

10    Finally, assuming *arguendo* evidentiary error, Petitioner cannot meet his

11    "heavy burden" of establishing prejudice.  Boyde, 404 F.3d at 1172.  As discussed

12    by the Court of Appeal, the evidence of Petitioner's guilt was strong.  In addition,

13    the jury was instructed it could "not consider this evidence for any other purpose

14    except for the limited purpose of intent and common plan or scheme" and it could

15    not find Petitioner guilty solely on the basis of the prior offense.  2 RT 374.  A jury

16    is presumed to follow its instructions.  See Weeks v. Angelone, 528 U.S. 225, 234,

17    120 S. Ct. 727, 145 L. Ed. 2d 727 (2000); Richardson v. Marsh, 481 U.S. 200, 211,

18    107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987).  Therefore, the jury is presumed not to

19    have considered the evidence for an improper purpose.  Thus, Petitioner has not

20    shown any potential error in admitting the evidence had a substantial and injurious

21    effect on the verdict.  See Brecht, 507 U.S. at 637.

22    Hence, the California Court of Appeal's decision was not "contrary to" or

23    an "unreasonable application" of "clearly established federal law."  28 U.S.C. §

24    2254(d).  Accordingly, Petitioner is not entitled to habeas relief on Claim Two.

25    ///

26    ///

27    ///

28    ///

1

**VII.**

2

**CONCLUSION**

3

      IT IS THEREFORE RECOMMENDED that the District Court issue an

4

order: (1) accepting the findings and recommendations in this Report; (2) directing

5

that judgment be entered denying the Petition; and (3) dismissing the action with

6

prejudice.

7

8

9

Dated: April 12, 2016

10

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28